# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

KAREN D. SILVA and
RAYMOND SILVA,

    Plaintiffs,

v.                                                                                  Civ. No. 19-937 GJF/GBW

UNITED STATES OF
AMERICA DEPARTMENT
OF THE AIR FORCE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Defendant's "Motion to Dismiss or for Summary Judgment for Failure to Establish Duty or Breach of Duty" [ECF 48] ("Motion"). The Motion is fully briefed. ECF 51 (response); ECF 53 (reply). For the following reasons, the Motion is **GRANTED** to the extent that it seeks summary judgment for Plaintiff's failure to create a genuine issue of material fact as to whether Defendant breached the duty of ordinary care it owed to her. The Motion is **DENIED** as moot in all other respects.

## I. UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff Karen Silva and her father stayed at the Kirtland Inn on Kirtland Air Force Base in Albuquerque, NM, on March 24, 2016.

2. Plaintiff had previously stayed at the Kirtland Inn on more than one occasion.

3. Plaintiff had also previously stayed at other Albuquerque hotels.

---

[1] In its Motion, Defendant alleged twenty-two material facts, ECF 48 at 2-4, which are summarized here largely without citation. Plaintiff disputed only two of these facts and proffered no additional material facts of her own. ECF 51 at 1–2. Variations between the Court's and Defendant's rendition of a particular fact stem either from the Court's quotation of source documents in the record, factual concessions made by counsel at oral argument, or ease of readership.

4. Plaintiff had previously showered at the Kirtland Inn.

5. Neither Plaintiff nor her father require assistance to use any bathroom facilities and did not request any special accommodations for their stay.

6. Neither Plaintiff nor her father observed anything in the bathroom that caused them concern, nor did they report any concerns to Kirtland Inn personnel before Plaintiff fell.

7. In the early morning hours of March 24, 2016, Plaintiff slipped and fell in the combination shower/bathtub in the bathroom.

8. Before entering the shower, Plaintiff unfurled the rubber bathmat that was on top of the toilet, placed it on the floor of the tub, and pressed down on the suction cups to attach the mat to the floor of the tub.

9. Once in the shower, while facing the shower head, Plaintiff wet her hair, stepped off the bathmat to reach shampoo at the back of the tub, and slipped and fell.

10. Plaintiff's expert witness, Vance Jenkins, later inspected the bathroom and combination shower/bathtub in which Plaintiff fell.

11. Mr. Jenkins opined that, in construction, "it is common knowledge that slipping and falling is a hazard for which precautions should be taken to protect users of the shower/tub." ECF 48-3 at 2; ECF 51 at 2.

12. Mr. Jenkins further opined that "[w]ell positioned and installed grab bars would have prevented accidental slipping and falling, but an even less expensive and invasive protection would have been a non-slip shower mat that covered the entire floor." ECF 48-3 at 1; ECF 51 at 2.

13. Mr. Jenkins, however, also noted that his "conclusion about the safety of the shower/tub ha[d] nothing to do with no grab bars attached to the walls." ECF 48-3 at 2; ECF 51 at 2.

14. In his deposition, Mr. Jenkins testified that the "culprit . . . [was] the curled-up bathmat." ECF 48-4 at 5.[2] Mr. Jenkins also opined that the bathmat was "too small." ECF 51-1 at 1.

15. During his inspection of the bathroom, Mr. Jenkins observed a rubber bathmat on top of the toilet and measured it to be 20 ¾ inches by 13 ¾ inches. ECF 48-3 at 1; ECF 51 at 2.

16. During his deposition, Mr. Jenkins acknowledged that he did not know of any laws governing the size of bathmats provided by hotels. ECF 48-4 at 6; ECF 51 at 2.

17. Although Mr. Jenkins was able to suction most of the bathmat to the bottom of the tub by getting down on his hands and knees and pushing, some parts of the mat curled upwards. ECF 48-4 at 6; ECF 51 at 2.[3]

18. Mr. Jenkins opined that it is customary for hotel guests to place the rubber bathmat inside the tub. ECF 48-1 at 9.

19. Plaintiff filed an administrative complaint with Defendant on March 1, 2018.

---

[2] Plaintiff disputes Defendant's framing of this fact. ECF 51 at 2. In its Motion, Defendant wrote that "Mr. Jenkins opined that the *only* culprit was the 'curled-up bathmat.'" ECF 48 at 3 (quoting ECF 48-4 at 5) (emphasis added). Plaintiff stresses that "Mr. Jenkins also opined that the bathmat was too small." ECF 51 at 2 (citing ECF 51-1 at 1). To be sure, Mr. Jenkins *did* testify that "[t]he culprit here . . . is the curled-up bath mat. *That's all there is to it*, in my opinion, my humble opinion." ECF 48-4 at 5 (emphasis added). In the same deposition, however, he also opined that the bathmat was "too small." ECF 51-1 at 1. Because the Court must resolve all reasonable inferences in Plaintiff's favor as the nonmovant, the Court construes Mr. Jenkins' opinion to be that the bathmat was unsafe because it was both too small and because it couldn't be completely unfurled. *See SEC v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013) ("[A] court 'view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party.'" (quoting *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Regardless, the Court considers this factual dispute to be immaterial for the same reason set forth in note 3.

[3] Defendant's version of this fact read "Mr. Jenkins admits that the bathmat suctioned to the tub when he got on his hands and knees and pushed down with his hands." ECF 48 at 2 (citing ECF 48-4 at 6). Plaintiff takes umbrage with this version because "Mr. Jenkins testified that even after making efforts to suction the mat to the tub, there was still some curl in it." ECF 51 at 2 (citing ECF 51-2 at 1–2). The Court considers this dispute to be immaterial because Plaintiff did not allege or testify that she either tripped on the mat or that she slipped because the mat gave way under her. In fact, Plaintiff testified that she slipped because she stepped *off the mat*. ECF 48-1 at 7 ("And so I got into the shower, wet my hair, and turned — let's see; if I was facing toward the showerhead — to the right to reach back and did pick up the shampoo. And when I did that, I had stepped off of the mat."); *see also* ECF 47-2 at 4; ECF 63 at 15 ("THE COURT: . . . I want to make sure I . . . understand the factual allegation that [Plaintiff] is proceeding . . . on. And that is that it's not that the bathmat slipped on the floor. It's instead that the bathmat wasn't big enough and she had to step on to the surface of the tub, which is where her fall began, yes? MR. NEWELL: Yes.").

20. In her administrative complaint, Plaintiff alleged that she "slipped and fell in the bathtub due to an incorrect sized bath mat" and suffered "a severe bone [c]ontusion on her left shin and two broken ribs."

21. On April 20, 2018, Plaintiff's counsel sent Defendant a letter, describing the incident in more detail. ECF 47-2 at 3; ECF 51 at 2. Therein, Plaintiff reasserted that Defendant's "negligent use of an incorrect[ly] sized bath mat directly led to" her injuries."

22. After Defendant denied Plaintiff's administrative claim, Plaintiff sued Defendant on October 14, 2019, alleging that Defendant was negligent because it failed to "provide a safe and reasonable non-slip surface of the shower or grab bars on [the] walls or tub edge of the shower." ECF 1 ¶ 6.

## II. ISSUE

The primary issue this Motion requires the Court to resolve is whether Plaintiff has pointed to sufficient admissible evidence that, when viewed in the light most favorable to her, could lead a reasonable fact finder to find that Defendant breached its duty of ordinary care to her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]

## III. PARTIES' ARGUMENTS

Defendant asserts that Plaintiff's negligence claim must be dismissed because she has not "identif[ied] [any] basis to conclude that the tub/shower enclosure presented any unusually hazardous condition for which [Defendant] failed to take precaution." ECF 48 at 11. To illustrate, Defendant points out that Plaintiff did not introduce *any* evidence that: (1) she or her father requested or required special bathroom accommodations; (2) she ever reported to Defendant that

---

[4] In its briefing, Defendant also argued that it did not owe a duty to Defendant "to provide a bathmat or a bathmat of a certain size." ECF 48 at 9. Because the Court holds that Plaintiff has not met her burden to establish a genuine issue as to whether Defendant breached its duty of ordinary care to her, the Court does not reach the question of whether New Mexico law imposes a duty on a hotelier to provide a bathmat or a bathmat of a certain size.

4

the bathtub was unsafe before she slipped; (3) the bathtub "was in disrepair, unclean, or otherwise not well maintained;" (4) the "bathtub did not meet industry standards, or failed to comply with required specifications;" or (5) testimony or evidence that industry standards or regulations call for "a large or different sized bathmat." ECF 48 11–13. Further, Defendant emphasizes that "the fact there was an accident, even if there were injuries or damages, is not sufficient to prove" it was negligent. *Id.* at 13 (citing *Waterman v. Ciesielski*, 528 P.2d 884 (N.M. 1974)). Thus, says Defendant, "Plaintiff lacks sufficient evidence to create a genuine issue of material fact to show that" it "breached a general duty of ordinary care." *Id*. at 14.

For her part, Plaintiff responds that "[t]here is no dispute that the Defendants [sic] were the party responsible for the bathmat and that the Defendant . . . knew or should have known that it [was] likely that a visitor at the Kirtland Inn would have used that bathmat." ECF 51 at 7. Plaintiff further argues that "Defendant[] also knew or should have known that the bathmat was too small for the bathtub" and that Defendant knew or should have known that the manner in which it stored "the bathmat made it almost impossible for the bathmat to properly adhere to the bathtub." *Id.* In other words, Plaintiff argues, the very fact that Defendant provided a bathmat proves (or at least creates a genuine issue of material fact) that Defendant knew that the bathtub was unsafe to use without a bathmat. ECF 62 at 2; ECF 63 at 18. Moreover, Plaintiff contends that Defendant knew or should have known that the bathmat it provided was insufficient because it only covered about 35% of the floor of the tub's surface area. ECF 62 at 2; ECF 63 at 18 (Plaintiff's counsel reasoning that "you don't put a bathmat in unless you recognize there's a safety concern. . . That's a recognition right there because bathmats don't automatically exist in a vacuum.").

## IV. Relevant Substantive Law

### A. Summary Judgment[5]

A "court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). The entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence favoring the nonmoving party is insufficient, there is no issue for trial. *Id.* at 249.

At the summary judgment stage, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). As with any fact asserted by a party in a summary judgment motion, the non-movant must point the Court to such support by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Notably, under our Local Rules, "[a]ll material facts set forth in the [motions and responses] will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b).

Because the Court decides motions for summary judgment by viewing the facts in the light most favorable to the non-moving party, the Court obeys three general principles. First, the Court's role is not to weigh the evidence, but only to assess the threshold issue of whether a genuine issue exists as to material facts such that a trial is required. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential

---

[5] Although Defendant brings this Motion under Federal Rules of Civil Procedure 12(b)(6) and 56, ECF 48 at 4, the Court's decision rests entirely on a summary judgment analysis. For that reason, the Court does not include the standard of review applicable to motions brought under Rule 12(b)(6).

to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *SEC v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013). Third, the Court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

### B. Federal Tort Claims Act and Premises Liability

The federal government enjoys sovereign immunity from liability, absent a specific waiver. *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *United States v. King*, 395 U.S. 1, 4 (1969)). Applicable here is 28 U.S.C. § 1346(b)(1), which authorizes suits against the federal government for: "money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." The United States is liable in tort "in the manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The parties agree, ECF 48 at 8; ECF at 6, that the controlling legal standard for premises liability is found at New Mexico Uniform Jury Instruction 13-1318, which provides:

> An [owner] [occupant] owes a visitor the duty to exercise ordinary care to keep the premises safe for the visitor's use. [This duty applies whether or not a dangerous condition is obvious.] [In performing this duty, the [owner] [occupant] is charged with knowledge of any condition on the premises [of which the [owner] [occupant] would have had knowledge had [he] [she] [it] made a reasonable inspection of the premises] [or] [which was caused by the [owner] [occupant] or [his] [her] [its] employees].]

7

UJI 13-1318 NMRA (brackets in original); *see also Ford v. Board of County Comm'rs of County of Dona Ana*, 879 P.2d 766, 771 (N.M. 1994) ("A landowner or occupier of premises must act as a reasonable man in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.").

"This instruction" applies to "slip and fall cases involving visitors." UJI 13-1318 NMRA. "Ordinary care" is described as "care which a reasonably prudent person would use in the conduct of the person's own affairs. What constitutes 'ordinary care' varies with the nature of what is being done. As the risk of danger that should be reasonably foreseen increases, the amount of care required also increases." UJI 13-1603 NMRA. As well, "[t]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." *Lujan v. New Mexico Dept. of Transp.*, 341 P.3d 1, 5 (N.M. Ct. App. 2011) (quoting *Pollock v. State Highway & Transp. Dep't*, 984 P.2d 768 (N.M. Ct. App. 1999)) (internal quotation marks omitted). A premises owner, however, "is not the insurer of the safety of visitors." *Brooks v. K-Mart Corp.*, 964 P.2d 98, 101 (N.M. 1998).

**IV. Plaintiff Has Not Presented Sufficient Evidence to Create Genuine Material Fact Issue**

Because Plaintiff would bear at trial the burden of establishing that Defendant breached its duty of ordinary care, the Court *must* grant summary judgment to Defendant if Plaintiff fails to make an evidentiary showing sufficient for a reasonable fact finder to conclude that Defendant breached that duty. *Celotex Corp.*, 477 U.S. at 322 ("The plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to the that party's case, and on which that party will bear the burden of proof at trial." (emphasis added)). As explained below, Defendant is entitled to judgment as a matter of law because Plaintiff failed "to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof" (i.e., whether Defendant breached its duty of ordinary care). *Celotex Corp.*, 477 U.S. at 323.

Plaintiff has not provided any evidence on the threshold inquiry of whether Defendant knew or should have known that the bathtub was a dangerous condition that needed to be made safe. UJI 13-1318 NMRA ( "[T]he [owner] [occupant] is charged with knowledge of any condition on the premises [of which the [owner] [occupant] would have had knowledge had [he] [she] [it] made a reasonable inspection of the premises]." (brackets in original)). At oral argument, Plaintiff's counsel conceded that the record did not include evidence that any other person had ever slipped and fallen in a bathtub at the Kirtland Inn. ECF 63 at 18–19 ("THE COURT: is there any evidence in the record of any other person slipping and falling in a bathtub at this inn? MR. NEWLL: I'm not aware of that, [y]our Honor."). Plaintiff's counsel also acknowledged that there was no evidence that any other guest had ever complained to Kirtland Inn personnel that its bathtubs were unreasonably slippery or otherwise dangerous. *Id.* at 19 ("THE COURT: Is there any evidence in the record . . . of any reports from any overnight guests that they found the tub in their room . . . unreasonably slippery? MR. NEWELL: Your Honor, I'm not aware of that").

Moreover, there is no evidence in the record of the Kirtland Inn's bathroom cleaning protocol or the regularity with which its cleaning crew adhered to it. And as Defendant has observed, "there is no evidence that the tub or shower was in disrepair, unclean[,] or otherwise not

well maintained." ECF 48 at 12.[6] Indeed, Plaintiff herself admitted that neither she nor her father "observed anything that caused them concern in the bathroom." ECF 48 at 2 (Defendant asserting this fact as undisputed; ECF 51 at 2 (Plaintiff admitting the same). Consequently, even considering the record before it in the light most favorable to Ms. Silva, the Court is compelled to hold that no rational trier of fact could find that the bathtub floor was a dangerous condition of which Defendant knew or should have known in the exercise of ordinary care.

Plaintiff has likewise failed to introduce evidence demonstrating that the bathmat Defendant provided was an inadequate precaution against whatever risk the bathtub floor presented. *See* UJI 13-1318 NMRA (stating that landowners owe a duty of ordinary care to keep premises safe to visitors); UJI 13-1603 NMRA (defining ordinary care as the care a "reasonably prudent person" would take in conducting his or her own affairs). At oral argument, Plaintiff's counsel contended that grab bars should have been installed, but he acknowledged that Mr. Jenkins *did not* opine that the lack of grab bars contributed to her fall. ECF 63 at 19–20. In fact, Mr. Jenkins observed that the walls of the bathroom in which Plaintiff fell did not have studs of the sort that grab bars could be affixed to and that the lack of such studs did not violate any code or regulation of which he was aware. ECF 48-4 at 6. The Court therefore concludes that Plaintiff has failed to put forth any *evidence* that the absence of grab bars could have breached the duty of ordinary care.

Regarding the sufficiency of the disputed bathmat, Plaintiff's counsel also recognized that Mr. Jenkins did not identify any industry standards governing how large bathmats provided by hotels should be or what percentage of the tub floor they should occupy. ECF 63 at 21–22 ("[THE

---

[6] The Court pauses to observe that the summary judgment record before it includes no references at all to any discovery responses provided by, or excerpts from the depositions of, any person employed by or affiliated with the Air Force or the Kirtland Inn. Although this conspicuous void in the evidentiary record has had a significant influence on today's decision, that void is not attributable at all to Plaintiff's new counsel, who entered his appearance only after discovery was closed. His representation of Plaintiffs despite circumstances not of his making has been zealous and admirable.

COURT:] I did not see in Mr. Jenkins'[s] opinion any further opinion about how much of the surface area of the tub a bathmat needed to cover in order to be reasonably sized. I didn't miss it, did I? MR. NEWELL: No."). Nor does the record contain any evidence of the size of bathmats provided by other hotels to use as a relevant comparison. *Id.* at 24–25. Indeed, Plaintiff has failed to identify *any* standard by which a finder of fact could ground a determination of whether the disputed bathmat was reasonably sized. *See id.* at 24 ("THE COURT: So what's the standard to which a fact finder would measure the sufficient coverage of the surface area of the tub? MR. NEWELL: . . . if you're the fact finder, it's whatever the finder of fact determines is reasonable.").

In the face of an evidentiary record that is completely bereft of any code, regulation, or industry custom or standard pertaining to the size of bathmats or the percentage of the shower/tub floor surface area they should cover, Plaintiff appeals to what she contends is common sense: a bathmat that covers only 35% of the surface of the bathtub floor creates the risk that a showering guest would necessarily have to step off the mat to reach the back of the bathtub. *Id.* at 22 ("MR. NEWELL: . . . I mean, again, you go to common sense . . . If [the bathmat is] only covering . . . 30 percent of the tub, that means 60 percent . . . of the tub is uncovered. And . . . any bathmat that covers more than 30 plus percent is going to be better and safer than [the disputed] bathmat."). While the assertion makes some intuitive sense, in the absence of any other evidence that this size and type of bathmat had *ever* created any appreciable risk to any other guest at any other time, the Court finds the assertion to be insufficient to have put Defendant on notice that the bathmat/bathtub combination was unreasonably dangerous to its guests. *See Thomson*, 584 F.3d at 1312 ("a plaintiff's version of the facts *must* find support in the record." (emphasis added)); *see also* Fed. R. Civ. P. 56(c)(1)(A) (requiring parties "asserting that a fact . . . is genuinely disputed" to cite to "particular parts of materials in the record.").

In short, the evidentiary record before the Court suggests that Karen Silva was the *first* person to slip and fall in a shower/bathtub at the Kirtland Inn, which according to Mr. Jenkins has been operating since 1959. ECF 48-3 at 1. And this is true even though the Inn has been using the same sized bathmats in the same sized bathtubs for an indefinite period of time. ECF 63 at 26. This record is insufficient as a matter of law to permit a factfinder to find that Defendant breached its duty of ordinary care to her. That being an essential element of Plaintiff's claim, her failure to point to such evidence entitles Defendant to judgment as a matter of law.

## V. CONCLUSION

In sum, Plaintiff has not proffered evidence sufficient to create a genuine dispute of material fact on the threshold issue that the bathtub itself was a dangerous condition. In addition, Plaintiff has failed to establish that, even assuming the bathtub was a dangerous condition, the bathmat Defendant provided was unreasonably small. For the Court to conclude on *this* evidentiary record that Plaintiff has created a genuine issue of fact that a trial would be required to resolve would be to convert Defendant's duty of ordinary care into one of strict liability. No matter how unfortunate were the circumstances of Ms. Silva's fall nor how serious and undeserved her injuries, the Court is not at liberty to elevate Defendant's duty beyond that long-established by New Mexico law.

Accordingly, because Plaintiff has failed to show that there is a genuine issue of material fact on whether Defendant breached its duty of ordinary care to her, Defendant is entitled to judgment as matter of law on Plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion is **GRANTED** to the extent that it seeks summary judgment for Plaintiff's failure to create a genuine issue of material fact as to whether Defendant breached the duty of ordinary care it owed to her. **IT IS FURTHER**

**ORDERED** that the Motion is **DENIED** as moot in all other respects. **IT IS FURTHER AND FINALLY ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

    **SO ORDERED.**

                                                THE HONORABLE GREGORY J. FOURATT
                                                UNITED STATES MAGISTRATE JUDGE
                                                *Presiding by Consent*